## G. D. ADDISON, Appellant, v. J. J. COPE, Respondent.

Springfield Court of Appeals, July 8, 1922.

1. **APPEAL AND ERROR:** Appellant's Motion to Dismiss Respondent's Appeal Need not be Considered. Where plaintiff has properly appealed, his motion to dismiss an attempted appeal by defendant need not be considered.

2. ————: Appellate Court not Bound by Chancellor's Finding of Facts. In an equity case, which is tried *de novo* on appeal, the Court of Appeals will accord great deference to the chancellor's finding of facts, but is not bound thereby; it being its duty to make such disposition as comports with equity and good conscience.

3. **ATTORNEY AND CLIENT:** Relation Existed Between Assignee and Maker of Note Executed on Former's Advice, Though he was Broker as Well as Attorney. The relation of attorney and client

Addison v. Cope.

existed between the assignee and maker of a note executed on the former's advice when consulted by the latter, whom he represented as an attorney in several cases, concerning the payee's account, though assignee was also in the business of discounting notes, and there was no litigation concerning the account, nor any dispute as to the amount or justness thereof.

4. ———: **Attorney's Information Cannot be Used to Client's Detriment.** Information acquired by an attorney concerning the subject-matter of his employment cannot be used to the detriment of his client; the relation being founded on trust and confidence.

5. **TRUSTS: Attorney, Discounting Note Executed by Client on His Advice, Held Trustee for Client.** An attorney, who purchased a note executed by his client on his advice, at less than its face value, after negotiations to that end with the payee's agent, while continuing to carry on litigation involving all of his client's financial substance without disclosng that the burden of such note mght be lessened, was a trustee for his client, though he was also in the business of loaning money and discounting notes.

6. **ATTORNEY AND CLIENT: Attorneys Held to Strictest Account in Relations With Clients.** Members of the legal profession are held to the strictest account in matters affecting their relations with clients.

7. ———: **Attorney Discounting Notes Executed by Client, Who Paid Him Fees Demanded for All Services, Improperly Allowed Fees for Services in Matter of Payee's Account.** Where the maker of a note, executed on the advice of his attorney, who purchased it from the payee at less than its face value, without disclosing the possibility of such settlement to his client, paid him all the fees he asked for all his services in all matters in which he was representing him, he was not entitled to compensation for services in the matter of an account, in payment of which the note was executed, in addition to the amount paid therefor.

8. ———: **Attorney not Entitled to Compensation for Risk Taken in Discounting Note Executed by Client on his Advice.** An attorney, who purchased a note executed by a client on his advice, at less than its face value, without disclosing the possibility of such settlement to the maker, was not entitled to compensation for the risk he took.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED *(with directions).*

*McGee & Bennett* for appellant.

Defendant was employed by plaintiff as his attorney to advise and counsel him relative to the transaction in question. The plaintiff placed all his business and financial affairs in his hands with implicit and trusting confidence and faith that defendant would regard his obligation and duty to plaintiff as his attorney. That defendant could not with impunity betray that trust and prey upon his client is so fundamental as to go without discussion. 4 Cyc, 857-958; Bucher v. Hohl, 199 Mo. 329; Guinan v. Donnell, 201 Mo. 173, 98 S. W. 478; Morton v. Forsee, 249 Mo. 409, 155 S. W. 765; Crooks v. Looney et al., 197 S. W. 125; Van Raalte v. Epstein, 202 Mo. 173; In Re Danford, 108 Pac. (Cal.) 322; Home Inv. Co. v. Strange, 152 S. W. (Tex.) 510; Gott v. Brigham, 41 Mich. 227, 2 N. W. 5; Aultman, Miller & Co. v. Loring, 76 Mo. App. 66.

*W. P. Elmer* and *C. C. Cope* for respondent.

(1) The maker of a note cannot question the consideration the indorsee holder paid for the note. That is a matter between such holder and his indorser and for that reason the question as to what defendant paid for the note is not a question for this court's consideration. 6 C. J., page 347, sec. 526, No. 45; 8 C. J., page 801, sec. 1058, No. 87; Powers v. Nelson, 19 Mo. 190; Banister v. Kenton, 46 Mo. App. 462; Goldstein v. Winkelman, 28 Mo. App. 432; Sims v. Everett, 168 S. W. 559; Musselman et al. v. Hays, 62 N. E. 1022. (2) If the relationship of attorney and client does not exist between the parties with respect to the note and trust deed in question then the purchaser of such outstanding claim could enforce same for himself. Casserleigh v. Green, 12 Colo. A. 515, 56 Pac. 189, affirmed 28 Colo. 392, 65 Pac. 32; Sanford v. Flint, 108 Minn. 399, 122 N. W. 315; Kilbourn v. Arnold, 6 Ont. A. 158; Jackson v. Strader, 56 S. E. 117, 61 W. Va. 161.

BRADLEY, J.—Plaintiff filed his Bill in Equity to require defendant to surrender a certain note for cancellation upon being reimbursed, and to restrain disposition of said not pending trial; and to have defendant declared to hold said note as trustee. The court rendered a decree satisfactory to neither party and plaintiff appealed, and defendant attempted to appeal. Plaintiff has filed here a motion to dismiss defendant's attempted appeal, but since the *cause* is here on plaintiff's appeal it is not necessary to go into the merits of the motion to dismiss defendant's appeal.

Plaintiff alleges that he has been a resident of Salem, Dent County, Missouri, for many years, and that defendant has for many years been a regular practicing attorney in Salem and Dent county. That during the year 1920 plaintiff had certain business and legal matters requiring the attention of an attorney-at-law, among which was an account of $2787.11 which Swift & Company held against plaintiff, and that plaintiff employed defendant to represent him in the matter of the Swift account, and all other legal matter with which plaintiff was concerned. That while said account was pending against plaintiff and while defendant was representing him in connection with the same, defendant, for the purpose of secretly obtaining financial gain over and above his fee, fraudulently represented to plaintiff that Swift & Company was about to file bankruptcy proceedings against plaintiff, and also was about to file criminal proceedings against him, and advised plaintiff that in order to avoid such proceedings it would be necessary for plaintiff to give Swift & Company his promissory note and secure same by a trust deed on real estate which plaintiff had. That reposing confidence in defendant as his counsel and relying upon his advice, plaintiff did on July 24, 1920, execute his promissory note to Swift & Company in the sum of $2787.11 due one year after date with interest from date at eight per cent, and executed a trust deed on certain described real estate to secure said note. That after the execution and delivery of said note and trust

deed, and while defendant was still counseling and representing plaintiff relative to said matter and other matters connected with plaintiff's business and property affairs, defendant without the knowledge and consent of plaintiff and in pursuance of his original purpose to make financial gain out of the Swift matter other than the fee, secretly entered into negotiations with the agents of Swift & Company for the purchase of said note and trust deed, and represented to Swift & Company that plaintiff was insolvent and that said note was worthless, and that by such representations and defendant's relations to plaintiff, defendant purchased said note and trust deed for $930, and Swift & Company duly assigned to defendant. Plaintiff alleges that by reason of defendant's relation of attorney and adviser to him that defendant knew of his financial affairs and knew that the note was solvent, and plaintiff further alleges in effect that under the circumstances defendant ought to be held to hold the note in trust for plaintiff. He further alleges that he has tendered the $930 together with eight per cent interest, and that he keeps good this tender.

The answer admits that defendant is a regular practicing attorney at Salem, Mo.; admits the plaintiff owed Swift & Company $2787.11 and that he gave the note and trust deed, and admits that defendant purchased the note and trust deed, and denies generally all other allegations. The court found that defendant purchased the note for $930, and at the time of the purchase defendant was plaintiff's attorney in a divorce case and two cases wherein the Security State Bank had sued plaintiff on some notes, and another case where plaintiff had sued the Dent County Savings Bank; that said suits involved a very large portion of plaintiff's property, and that because thereof defendant is liable to be held as a trustee in the purchase of the Swift & Company note, "but owing to the fact that defendant took the risk of making such purchase, the court finds that he should be reimbursed in the amount of money he paid for said note and deed of trust and a reasonable sum for his

trouble, services and risk in regard thereto. It is therefore adjudged by the court that the said defendant holds the said note amounting to the sum of $2934.36 the amount which will be due thereon August 31, 1921, as trustee for plaintiff and plaintiff is entitled under the law to redeem the same, and the court finds that the proper and equitable amount that should be paid by plaintiff to redeem the said note and deed of trust securing the same is $1467.18 on August 31, 1921. It is therefore considered and adjudged by the court that if plaintiff shall pay to defendant on or before August 31, 1921, the said sum of $1467.18 the defendant shall deliver the said note to plaintiff, and enter a proper cancellation of the deed of trust securing the same, and upon failure to make such payment or tender thereof the temporary injunction heretofore granted against defendant in this cause is to be dissolved.''

This is an equity case and is here for trial *de novo,* and it is our province and our duty to make such disposition as comports with equity and good conscience. [Schultz v. Bowers et al., 223 S. W. (Mo.) 725.] While we will accord great deference to the finding on the facts by the chancellor below, yet we are not bound thereby. At the time plaintiff gave the note to Swift & Company there was much pending litigation to which he was a party. A divorce case was pending in which his wife was seeking a divorce, alimony and judgment for alleged loans to him. In the divorce case a restraining order was issued prohibiting plaintiff here from disposing of any of his property. After the divorce suit was commenced the Dent county Savings Bank refused to surrender funds plaintiff had on deposit, and this resulted in litigation. [Addison v. Bank, 205 Mo. App. 622, 226 S. W. 322.] Other suits were filed in addition to the divorce suit and the bank suit mentioned, and defendant was counsel for the present plaintiff in all these suits. The divorce suit reached this court and was disposed of here on stipulations after the remarriage of plaintiff and his wife.

Addison v. Cope.

Plaintiff had been selling fertilizer for Swift & Company on a commission basis, and had $2000 to what he called "fertilizer money" on deposit in the Farmers & Merchants Bank of Salem. When the domestic storm broke he drew this out with the intention he says of paying or ·delivering it to Swift & Company, but that he consulted defendant and defendant told him that if his wife were to get all his property to let her pay his debts. A judgment of debt was rendered against plaintiff in the divorce case for $6000 and judgment for alimony for $1500. Defendant signed plaintiff's appeal bond and plaintiff secured him by a trust deed on his real property in the sum of $10,000. This trust deed covered the same property as the trust deed securing the Swift & Company note, and was prior to the Swift & Company trust deed. Letters written by G. C. Dalton who was at the time prosecuting attorney and was representing Swift & Company tend strongly to show that he and defendant had had an understanding from the beginning that if plaintiff gave the note and trust deed to Swift & Company defendant would buy the note for 33⅓ cents on the dollar.

With the lapse of time the matrimonial sea somewhat calmed, correspondence continued between Dalton and Swift & Company relative to the note and relative to defendant buying it. Some few months before defendant purchased the note he postponed the purchase on the excuse of not having the money at that time and not being able to get it. When the matrimonial sea became sufficiently calm to justify adventure negotiations were opened between plaintiff and his wife, who had been married many years and had children, to reach a reconciliation. Plaintiff testified that all negotiations for reconciliation with his wife were with the knowledge and consent of defendant. The negotiations resulted in a reconciliation and remarriage of plaintiff and his wife. Shortly before plaintiff left for St. Louis for the remarriage he told defendant when the nuptials would be celebrated, and defendant requested that plaintiff send him a telegram when the remarriage was consummated.

The marriage occurred in St. Louis December 18, 1920, and on same day plaintiff notified defendant by telegram. On December 17, 1920, Dalton wrote Swift & Company for a second confirmation authorizing him to sell the note to defendant for 33⅓ cents on the dollar. December 18, 1920, Swift & Company wired Dalton to accept 33⅓ cents on the dollar. On December 18th defendant purchased the note for $930, and paid cash.

The evidence tends strongly to show that the remarriage would result in the cure of all of plaintiff's financial ills. Immediately after the remarriage plaintiff's wife released of record all her judgment liens which were the greatest debts resting upon plaintiff. The record further shows that plaintiff paid to defendant all the fees demanded in all the litigation mentioned. Defendant justifies his purchase of the note mentioned on the ground that in addition to being a lawyer he was also in the business of loaning money and discounting notes, and that he purchased the note in the usual course of a business transaction, and is entitled to whatever profit he may make, and is subject to whatever loss he may sustain. It is sometimes said that there is a *quasi*-maxim to the effect that *business has no conscience,* but this principle, however much it may prevail in the general business world, has never been recognized in the *professional business* of a lawyer. While there was no litigation concerning the Swift & Company account, yet the record discloses, in fact defendant admits, that plaintiff consulted him concerning this account. Defendant did not seem to regard the consultation concerning the Swift account as a professional matter. He contends that since there was no dispute as to the amount of the account and no dispute as to its justness the advice he gave should not be magnified into professional advice. Plaintiff, however, says that the consultations and advice given him by defendant concerning the account and the giving of the note and trust deed covered a much wider scope than defendant concedes, and that he proceeded in relation to the account and the giving of the note and

trust deed upon the advice of defendant. Defendant states his position as follows: ''Defendant fulfilled all his duties as a lawyer under the terms of his employment in each case in which he was employed, and faithfully executed every trust imposed in him. While he was true and loyal in every respect, that did not preclude him from dealing in notes which plaintiff had executed and delivered in payment of an honest debt. Plaintiff had full knowledge of defendant's brokerage business. Each time plaintiff needed money he came to defendant and executed his note just as he did to Swift & Company, therefore defendant had a right to expect that plaintiff would pay his honest debt. Defendant knew that plaintiff actually got the fertilizer for which the note was given and plaintiff always informed defendant that he was going to pay the note and acting on this belief defendant purchased the note. When a lawyer does a brokerage business as well as a law business just because someone who has given his note, or who in the future might execute his note, certainly would not preclude the lawyer from buying such note when the lawyer actually knew the note was given for an honest and valuable consideration, and like the one at bar for the face value.''

Both sides have somewhat extensively briefed this cause, but it is not necessary to enter upon an extended discussion of the law regulating the relation of attorney and client. Defendant concedes that if the relation of attorney and client existed between him and plaintiff concerning the Swift & Company account, the note and trust deed, that then he could not deal as he did in relation thereto, and be free from the responsibilities and duties that such relation imposes. Suffice it to say that we think from this record that the relation of attorney and client existed in regard to the Swift account note and deed of trust.

The relation of attorney and client is founded upon trust and confidence, and information acquired concerning the subject-matter of the employment while that relation exists cannot be thereafter used by the attorney

210 M. A.—37

to he detriment of the client. [Eoff v. Irvine et al., 108 Mo. 378, 18 S. W. 907.] It might be that no detriment measured in dollars and cents comes to plaintiff because of defendant's purchase since he *owed* the Swift account. But this course of reasoning overlooks the fact that from the beginning Dalton, Swift's attorney, and defendant according to Dalton, were discussing the sale of the note to defendant for 33⅓ cents on the dollar. In view of the relation that existed it was the duty of defendant to advise plaintiff that the Swift matter might or could be settled to his advantage. Instead, however, defendant continued on in a multiplicity of litigation which involved the whole of plaintiff's financial substance without disclosing that the burden of the Swift note might be lessened. That trust and confidence upon which the relation of attorney and client is founded would be shaken if not shattered if defendant could under the facts here be said to have purchased the note in the course of a business deal wholly free from his relation as counsel for plaintiff. It is better to remain on safe and secure professional ground to the end that the ancient and honored profession of the law and its representatives may not be brought into disrepute. Courts have consistently held the members of the profession to the strictest account in matters affecting the relation of attorney and client.

The learned chancellor decreed that plaintiff should pay to defendant $1467.18. This amount was arrived at by allowing defendant approximately $500 for his services in the Swift matter and for the *risk* he took in buying the note. Plaintiff paid all the fees defendant asked. Defendant was representing plaintiff in many matters, and the fees paid covered all. There can be no compromise judgment here except by consent. Either defendant is entitled to the benefit of his bargain or he is not. He certainly is not entitled to have the judgment of a court of equity that he is entitled to have compensation for the risk. The law frowns most severely upon an attorney taking the *risk* that defendant took, not because it frowns upon a business transaction, but because

the transaction here is so intimately related and connected with the relation of attorney and client. It is our conclusion that defendant should be held to have purchased the Swift note in the capacity of a trustee for plaintiff, and we so hold.

The judgment is reversed and cause remanded with directions to the trial court to enter up a decree to the effect that plaintiff pay to defendant $930 with eight per cent interest from the date of defendant's purchase of the Swift note, December 18, 1920, and within such time as the trial court shall direct, and that upon such payment the note and deed of trust shall be cancelled and the record of the trust deed satisfied, and that the injunction issued be continued in force during the period of time that the court may grant in which to pay said $930 and interest. The court will give plaintiff such time as is reasonable in view of all circumstances obtaining at the time. In the event of plaintiff's failure to pay as directed by the court, then the court is directed to dissolve the injunction and dismiss plaintiff's bill with prejudice. *Cox, P. J.,* and *Farrington, J.,* concur.