[No. B125935. Second Dist., Div. Three. July 28, 1999.]

JOHN P. PRINGLE, as Trustee in Bankruptcy, etc., Plaintiff and Respondent, v.
FRANK LA CHAPELLE, Defendant and Appellant.

**COUNSEL**

Silver & Freedman and Linda T. Pierce for Defendant and Appellant.

Roquemore, Pringle & Moore and Peter C. Anderson for Plaintiff and Respondent.

## OPINION

### ALDRICH, J.—

#### INTRODUCTION

Plantiff and respondent Yvonne M. Renfrew, an attorney, sued defendant and appellant Frank La Chapelle for attorney fees. La Chapelle appeals from the judgment entered in favor of Renfrew.[1] We affirm.

#### FACTUAL AND PROCEDURAL BACKGROUND

La Chapelle provides an appendix in lieu of a clerk's transcript and a supplemental appendix as the record on appeal. We have not been provided with a reporter's transcript and the provided appendices are incomplete. Further, the statement of the case is inadequate as there are few citations to the record. We recite only those facts either admitted by both parties, or for which we find factual support in the limited record before us.

Renfrew filed a complaint against La Chapelle and Interscience Computer Corporation (Interscience). Renfrew alleged she was owed money for legal services rendered to La Chapelle and Interscience pursuant to written fee agreements.

Attached to the complaint were two written fee agreements. The first agreement, dated March 7, 1996, was executed by Michael W. Brennan, as president of Interscience. It authorized Renfrew to render legal services to Interscience to defend against claims of harassment being asserted by Julie Zunaga.

The second fee agreement, dated May 4, 1996, authorized Renfrew to represent Interscience, La Chapelle as an individual, and Brennan as an individual, with regard to Ms. Zunaga's claims. This second agreement stated it was required because the complaint filed by Ms. Zunaga named as defendants Interscience, La Chapelle, and Michael Brennan. The second agreement contained numerous paragraphs discussing conflicts of interest arising from an attorney's representation of multiple parties and stated that "actual conflicts of interest [have arisen] among you." It strongly advised that those executing the agreement "consult with independent counsel prior to agreeing to waive any conflict of interest."

The second fee agreement also advised that consent by Interscience should be given by an individual other than Brennan or La Chapelle. The second

---

[1] John P. Pringle, chapter 7 (11 U.S.C. § 701 et seq.) trustee, appears for Renfrew.

agreement was executed on May 21, 1996, by Brennan in his individual capacity, La Chapelle in his individual capacity, and by La Chapelle on behalf of Interscience as chief executive officer.

Interscience filed for bankruptcy. Renfrew's suit for legal fees proceeded before a jury only against La Chapelle.

Upon special verdict, the jury concluded that La Chapelle had given informed written consent to allow Renfrew to represent more than one client, wherein the interests of the clients actually conflicted. The jury returned a general verdict in the amount of $71,100.29, in favor of Renfrew. A judgment in that amount was entered in favor of Renfrew on July 21, 1998.

La Chapelle's motions for judgment notwithstanding the verdict and a new trial were denied.

La Chapelle appealed from the judgment.

## DISCUSSION

*The record is inadequate for us to address the issues raised by La Chapelle.*

La Chapelle contends the trial court made prejudicial comments, erred in ruling on evidentiary matters, and erred in refusing a special jury instruction. La Chapelle also contends there was insufficient evidence to support the verdict because Renfrew did not prove damages in the sum awarded by the jury.

■ La Chapelle has the burden of proof on appeal. He has not provided a sufficient record to enable us to analyze these contentions. No reporter's transcript or other items pertinent to these issues have been provided. There are insufficient citations to the record to enable us to verify the facts asserted. Briefs must provide argument and legal authority for the positions taken; they may not rely upon matters which are not part of the record on appeal. Without the proper record, we cannot evaluate issues requiring a factual analysis. The evidence is presumed sufficient to support the judgment. As Renfrew pointed out in the respondent's brief, La Chapelle's brief and the record on appeal are totally deficient. Thus, these improperly raised issues have been deemed waived.[2]

■ La Chapelle also argues that the verdict was unsupported by the evidence because Renfrew failed to abide by the California Rules of

---

[2]California Rules of Court, rules 13 and 15; *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 574-575 [224 Cal.Rptr. 664, 715 P.2d 624] (cannot evaluate contentions absent transcript or

Professional Conduct. In raising this argument, La Chapelle points to rules 3-310 and 3-600. These rules address conflict situations and an attorney's responsibility to obtain written consent when representing a corporation and simultaneously representing the corporation's officers, directors, employees, members, shareholders, or other constituents. If there is an actual or potential conflict, the attorney must discuss the conflict and obtain a written waiver. "If the organization's consent to the dual representation is required . . . the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members." (Rules Prof. Conduct, rule 3-600(E).)[3] La Chapelle argues Renfrew did not abide by these mandates of the Rules of Professional Conduct because La Chapelle signed the second

---

settled statement; party challenging judgment has burden to show reversible error); *In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1] (reviewing court limited to matters contained in record and not those suggested in briefs); *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [79 Cal.Rptr.2d 273] (contentions waived when there is failure to support them with reasoned argument and citations to authority); *Bernard* v. *Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401] (on appeal party must provide page citations to record); *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [188 Cal.Rptr. 123] (argument of counsel is insufficient; briefs must contain factual underpinning, record references, argument, and authority); *Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1102 [200 Cal.Rptr. 18] (without proper record, evidence conclusively presumed to support the judgment); *County of Los Ángeles* v. *Surety Ins. Co.* (1984) 152 Cal.App.3d 16, 23 [199 Cal.Rptr. 351] (sufficiency of evidence claims cannot be reviewed from clerk's transcript and exhibits).

[3]Rules of Professional Conduct, rule 3-600, Organization as Client, reads in part:

"(A) In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(D) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent.

"(E) A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members."

Rule 3-310, Avoiding the Representation of Adverse Interests, reads in part:

"(A) For purposes of this rule:

"(1) 'Disclosure' means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

"(2) 'Informed written consent' means the client's or former client's written agreement to the representation following written disclosure;

fee agreement in his individual capacity and additionally signed this agreement on behalf of Interscience. Thus, La Chappelle argues he owes no attorney fees since the fee agreement did not meet the mandates of the Rules of Professional Conduct.

La Chapelle bases his argument on the following two statements: (1) "In this case, the evidence was not in conflict as to [Renfrew's] violation of Rules of Professional Conduct, Rule 3-310 and Rule 3-600"; and (2) "Respondent failed to obtain valid consent to dual representation. In addition, the uncontroverted evidence at trial established that Respondent did not obtain a valid waiver of conflict of interest from Appellant." However, on the record before us, La Chapelle cannot factually support these statements. We have no evidence which would enable us to ascertain if there was conflicting evidence on whether Renfrew violated the Rules of Professional Conduct. We do not know if the corporation, in some way other than the two fee agreements, consented to the representation.

La Chapelle is correct in suggesting that an attorney's breach of a rule of professional conduct may negate an attorney's claim for fees.[4] However, La Chapelle has not cited a case standing for the proposition that a violation of

---

"(3) 'Written' means any writing as defined in Evidence Code section 250.

"(B). A member shall not accept or continue representation of a client without providing written disclosure to the client where:

"(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

"(2) The member knows or reasonably should know that:

"(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

"(b) the previous relationship would substantially affect the member's representation; or

"(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(C) A member shall not, without the informed written consent of each client:

"(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

"(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict;

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

[4]E.g., *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6 [136 Cal.Rptr. 373] (one partner in firm represents client in a personal injury matter, another partner represents client's wife in a marital dissolution action; irreconcilable conflict precludes firm from recovering fees incurred after the breach of the rules of professional conduct); *Cal Pak Delivery, Inc.* v. *United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 15-16 [60 Cal.Rptr.2d 207] (attorney represents

a rule of professional conduct automatically precludes an attorney from obtaining fees. Rules 3-310 and 3-600 do not so provide. (Compare Rules Prof. Conduct, rule 1-100(A) [violation of professional conduct rule not intended to establish civil liability] with Bus. & Prof. Code, § 6147 [contingency fee statute states that failure to abide by written requirements relating to contingency fee agreement makes contract voidable at option of client and attorney entitled to reasonable fee].) The rules required Interscience's consent to the dual representation to be given by someone other than La Chapelle, since La Chapelle was also consenting to the representation on his own behalf. However, here La Chapelle, who had been informed of the potential conflict, and not Interscience, is trying to escape the attorney fee obligation. La Chapelle has not cited a case in which the individual defendant, who executed the fee contract for himself as well as for the corporation, is not obligated to pay fees.

Further, the Supreme Court case addressing the issue, and upon which all others are based (*Clark* v. *Millsap* (1926) 197 Cal. 765 [242 P. 918]), seems to suggest there must be a serious violation of the attorney's responsibilities before an attorney who violates an ethical rule is required to forfeit fees. *Clark* stated at page 785, " 'Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.' [Citations.]"[5] On the record presented, we cannot ascertain if the purported violation of the rules was serious, if any act was inconsistent with the character of the profession, or if there was an irreconcilable conflict. We

plaintiff in class action; attorney offers to dismiss case if defendant makes multimillion-dollar payment to attorney personally; ". . . court may prevent counsel's recovery of fees from the client where the attorney has violated ethical rules; whether through fraud, acts incompatible with the faithful discharge of duties or wrongful abandonment of the client."); *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253] (attorney prevented from collecting fees when represents minority shareholder in proxy fight against corporation designed to gain control of the corporation; attorney previously had been corporation's general counsel); *Conservatorship of Chilton* (1970) 8 Cal.App.3d 34 [86 Cal.Rptr. 860] (representation of friend and putative husband inimical to, and in direct conflict with, representation of wife; attorney not entitled to fees as in essence attorney rendered no services to wife).

[5]Accord, Restatement Third of the Law, The Law Governing Lawyers (Proposed Final Draft No. 1 section 49, page 187) ("A lawyer engaging in clear and serious violation of duty ·to a client may be required to forfeit some or all of the lawyer's compensation for the matter. In determining whether and to what extent forfeiture is appropriate, relevant considerations include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the. client, and the adequacy of other remedies."); Hazard and Hodes, The Law of Lawyering (1998 supp.) section 1.5:108, page 108 (an attorney fee may be subject to forfeiture as a "sanction for gross abuse by the lawyer of obligations to the client, or other serious violations of the law of lawyering.").

do not know if the interests of La Chapelle and Interscience diverged or if Renfrew had obtained or would expect to obtain confidential information which might have been harmful to one client, but helpful to another. Thus, we cannot ascertain if the purported rule violation by Renfrew was incompatible with the faithful discharge of her duties.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Renfrew.

Croskey, Acting P. J., and Kitching, J., concurred.