[No. A101841. First Dist., Div. Four. Nov. 25, 2003.]

A.I. CREDIT CORP., INC., Plaintiff and Respondent, v. AGUILAR & SEBASTINELLI, Defendant and Appellant.

## COUNSEL

Aguilar & Sebastinelli, Raul V. Aguilar, and Allen Joseph Kent, for Defendant and Appellant.

Pillsbury Winthrop, Philip Sproul Warden, Thomas V. Loran III and Anne Fortune Wickers, for Plantiff.

OPINION

**SEPULVEDA, J.**—Aguilar & Sebastinelli (Aguilar) is a law firm, which represented A.I. Credit Corp., Inc. (AICCI) in a collection action against Richard W. Peterson (Peterson). It appeals from a summary judgment in a separate declaratory relief action regarding Aguilar's right to attorney fees in the collection action. The judgment was entered on the basis that Aguilar's claim for legal fees against AICCI was barred because the court disqualified Aguilar from representing AICCI in its collection action against Peterson. We affirm.

## BACKGROUND

The underlying actions arise out of an unsatisfied judgment in favor of AICCI against Peterson, entered in 1995. Pillsbury Madison & Sutro[1] (Pillsbury) represented AICCI in that action. AICCI collected a portion of the judgment. Between June 1997 and June 2000, AICCI made no attempts to collect the remaining portion of the judgment, which totaled approximately $675,000.

For "several years" prior to 1993, Aguilar was "general, business and claims counsel" to Peterson and "several entities associated with [Peterson]." During that time, Peterson owned AAMB Insurance Agency, Inc., "had an interest" in American Emerald Insurance Company, "was [a] consultant to some groups or cooperatives of insured restaurants, taverns, and hospitality establishments," and "[t]hrough a closely-held corporation, . . . indirectly owned one-third of a surplus line insurance broker." Aguilar was "instrumental in organizing, advising and handling and managing the legal affairs of all these companies, . . . and for all of those interests and entities, [Aguilar] was general counsel, litigation counsel, and guiding confidante." Peterson declared that Aguilar "gave me advice and I gave it confidential information concerning my assets and income, and their location, disposition and protection." Jon S. Heim, Peterson's attorney and a former litigator with Aguilar, submitted a declaration in which he stated that he had conversations with Raul Aguilar while he worked for the firm in which they discussed "the alleged connection of [a] Cayman Island condominium with Mr. Peterson, the methods and monies by which the condominium was acquired by the company that held it of record . . . and advice and strategies to protect the company and condominium." Peterson paid Aguilar approximately $1,500,000 in attorney fees and costs during the period in which Aguilar represented him and his related entities. The attorney-client relationship deteriorated in 1993, and Aguilar twice sued Peterson for attorney fees.

Allen Kent, an attorney with Aguilar, was acquainted with Philip Warden, a partner at Pillsbury. The two men "often spoke to each other about the

---

[1] The firm is now known as Pillsbury Winthrop.

various legal actions . . . in which [their] firms were engaged in against Peterson . . . ." Kent told Warden that Aguilar had represented Peterson and "his related and controlled entities [and informed him of] the litigation between [Aguilar] and Peterson and his entities . . . ." Warden informed Kent that AICCI had an unsatisfied judgment against Peterson. Warden also informed Kent that AICCI had not attempted to enforce the judgment by executing on real estate owned by Peterson on Clayton Street in San Francisco because they believed the property had insufficient equity. Warden told Kent that Pillsbury was representing AICCI on an hourly basis. Kent suggested that Aguilar could handle enforcement of the judgment against Peterson on a contingency basis, to which AICCI ultimately agreed.

Aguilar and AICCI entered into a written contingency fee agreement on March 15, 2000, under which Aguilar would provide the following services in respect to collection of the unsatisfied judgment against Peterson: "determining the location of and amount of viable assets of [Peterson], preparation and filing of necessary petitions, motions or other papers in or out of the State of California to secure said assets and/or to effect transfer of title of assets to [AICCI], and collection of any revenue generated by use of said assets by other individuals and/or entities." The contract provided that "[e]ven though [AICCI] may discharge [Aguilar] or obtain a substitution of attorney before any recovery, [Aguilar] shall be entitled to fees calculated at the reasonable value of services performed . . . ."

Aguilar then undertook to "obtain a writ of execution, have issued a notice of levy, make arrangements with the San Francisco Sheriff, secure a formal property appraisal and title report, obtain beneficiary statements from Bank of America and the other senior lien holder, arrange service on Peterson of the writ and notice of levy, and secure[] an order to show cause re sale of the Clayton Street property. In addition to the proceedings in California, [Aguilar] moved forward in the State of Nevada and retained Nevada counsel to move against the Peterson property in Las Vegas . . . ."

Peterson moved to disqualify Aguilar on the basis of conflict of interest due to possession of confidential information and pursuing execution of the judgment under a "corrupt motive of passion or interest," in violation of Business and Professions Code section 6068, subdivision (g). The court granted the motion without specifying on which grounds it relied. At the hearing on the motion to disqualify, the court indicated: "I thought there seemed to be a lot of prior representation, a lot of fees and, therefore, [by] implication, a lot of confidential information."

AICCI then reinstated Pillsbury to represent it in the collection proceedings. Approximately three months later, Pillsbury negotiated a settlement with Peterson on AICCI's behalf by the terms of which Peterson would pay AICCI $675,000 and AICCI would "call off" the sale of Peterson's residence.

Aguilar then sought payment of attorney fees from AICCI. Following AICCI's refusal to pay, Aguilar served a "Notice of Client's Right to Arbitration" on AICCI. On February 27, 2001, AICCI filed a request for nonbinding arbitration of the fee dispute through the Bar Association of San Francisco. A panel of three arbitrators issued its advisory award in favor of Aguilar, finding that no conflict of interest existed. The panel awarded Aguilar $213,000, what it determined was the fair value of Aguilar's services in accordance with the fee agreement. A copy of that award was served on the parties on August 15, 2002.

In September 2002, AICCI filed a complaint against Aguilar for declaratory relief in which it sought a declaration that it owed Aguilar nothing for attorney fees because the court disqualified Aguilar from continuing to represent AICCI based on a disqualifying conflict of interest. Aguilar filed an answer in which it raised the defenses of unclean hands and quantum meruit, as well as a cross-complaint seeking attorney fees under its written contract with AICCI.

AICCI filed a motion for summary judgment on the basis that Aguilar was not entitled to any attorney fees because it had a disqualifying conflict of interest in representing AICCI in the collection proceeding against Peterson. The court granted the motion on December 31, 2002, and judgment was entered on January 28, 2003. This timely appeal followed.

## DISCUSSION

AICCI moved for summary judgment on the basis that an attorney disqualified due to a conflict of interest is not entitled to fees incurred after the breach. "It is settled in California that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility." (*Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 618 [120 Cal.Rptr. 253].) "[A] court may prevent counsel's recovery of fees from the client where the attorney has violated ethical rules; whether through fraud, acts incompatible with the faithful discharge of duties or wrongful abandonment of the client." (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 15–16 [60 Cal.Rptr.2d 207].)

In reviewing the grant of summary judgment, "we conduct an independent review to determine whether there are triable issues of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] We construe the moving party's evidence strictly, and the nonmoving party's evidence liberally, in determining whether there is a triable issue." *(Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co.* (2002) 98 Cal.App.4th 66, 72 [119 Cal.Rptr.2d 394].)

## A. *Order Disqualifying Aguilar*

Aguilar asserts that it "does not now contest the order granting the motion to disqualify." Nevertheless, it argues that, despite the order of disqualification, "there is no evidence of any ethical breach . . . by [Aguilar]." Consequently, Aguilar urges that there is a triable issue of material fact as to whether it violated any ethical standards, specifically rule 3-310(E) of the Rules of Professional Conduct (rule 3-310(E)).[2] Aguilar asserts that the fact that the trial court issued an order disqualifying it from further representation of AICCI in the action against Peterson is not "ipso facto conclusive that a violation of Rule 3-310(E) occurred," thereby precluding summary judgment. Aguilar's argument is riddled with errors. First, Aguilar did not appeal the disqualification order, and consequently cannot argue now that there was no evidence that an ethical violation occurred.[3] "An order disqualifying an attorney from continuing to represent a party in a case has been held directly appealable." (*Reich v. Club Universe* (1981) 125 Cal.App.3d 965, 969 [178 Cal.Rptr. 473].) "Consequently the order of disqualification is binding on appellant, and the merits of that ruling may not be relitigated in the instant case." (*Ibid.*)

Aguilar maintains that it was prevented from "legally challeng[ing] the disqualification order . . . because it [was] not a party to that case" and "could not contest" the disqualification order "due to [AICCI's] termination of its retention . . . ." ■ Disqualified attorneys themselves have standing to challenge orders disqualifying them. (See *Cal Pak Delivery, Inc. v. United Parcel Service, Inc., supra,* 52 Cal.App.4th at p. 8.) Aguilar also maintains that, because AICCI's attorneys said they would protect Aguilar's financial interests, Aguilar was somehow lulled into not appealing the order. The court rejected a similar contention in *Reich v. Club Universe*. There, the disqualified attorney argued that opposing counsel did not dissuade him from his false belief that the disqualification order was not appealable. The court found the argument to be without merit, noting that "[a]ppellant was an attorney fully capable of determining for himself whether the orders were appealable, and he is not entitled to blame opposing counsel for his failure to appeal." (*Reich v. Club Universe, supra,* 125 Cal.App.3d at p. 970.)

---

[2] Rule 3-310(E) provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

[3] Even if the disqualification order had been appealed, we would be required to "accep[t] as correct all of its express or implied findings supported by substantial evidence," and review the order for abuse of discretion. (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 [117 Cal.Rptr.2d 125].)

Next, Aguilar urges that the failure of the trial court to specify reasons in its order disqualifying the firm allows the issues underlying Aguilar's disqualification to be relitigated here. AICCI asserts that Aguilar is collaterally estopped from relitigating the issue of its breach of an ethical obligation, which was necessarily decided by the court in ordering Aguilar's disqualification.

■ "Collateral estoppel precludes a party from relitigating in a second proceeding the matters litigated and determined in a prior proceeding. The requirements for invoking collateral estoppel are the following: (1) the issue necessarily decided in the previous proceeding is identical to the one that is sought to be relitigated; (2) the previous proceedings terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the previous proceeding." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201, fn. 1 [108 Cal.Rptr.2d 471, 25 P.3d 670].) An order disqualifying an attorney, which was not appealed, has collateral estoppel effect in a subsequent action involving the same issue. (*Reich v. Club Universe supra,* 125 Cal.App.3d at pp. 970–971.)

■ Aguilar argues that the court, in disqualifying it from representing AICCI, did not necessarily find that Aguilar violated rule 3-310(E).[4] Whether or not the court specifically found a violation of rule 3-310(E), there is no question that it found a disqualifying conflict of interest.

First, both the grounds for the motion and the court's statements at the hearing on the motion demonstrate that Aguilar was disqualified based on a disqualifying conflict of interest. Peterson brought the motion to disqualify Aguilar on the basis that Aguilar possessed confidential information about him, his assets and related entities, and consequently had a conflict of interest between protecting his confidential information and advancing AICCI's interests in the collection proceedings. He submitted a declaration in which he stated that he had provided confidential information to Aguilar about his "assets and income, and their location, disposition and protection." Peterson also moved to disqualify Aguilar on the basis that it was acting out of a "corrupt motive of passion or interest" in violation of Business and Professions Code, section 6068, subdivision (g).

---

[4] Aguilar asserts that the court could not have found a violation of rule 3-310(E) because that rule only allows disqualification of an attorney, not a law firm. An attorney's disqualifying conflict of interest "must inevitably lead to the . . . firm's vicarious disqualification . . . to assure the preservation of [the client's] confidences and the integrity of the judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1156 [86 Cal.Rptr.2d 816, 980 P.2d 371].)

At the hearing on the disqualification motion, the bulk of Aguilar's argument was that the information about Peterson's assets was not confidential, but could be obtained from public records. Aguilar conceded that "the court granted the motion to disqualify [Aguilar] . . . on the basis that [Aguilar] might possess and use confidential information it obtained from Peterson about the Clayton Street property."[5] At the hearing, the court stated: "I thought there seemed to be a lot of prior representation, a lot of fees and, therefore, [by] implication, a lot of confidential information." Accordingly, the court necessarily determined, based on conflicting evidence, that Aguilar had a conflict of interest between maintaining Peterson's confidential information and representing AICCI in its collection proceeding against Peterson.

Aguilar was disqualified based on its conflict of interest in representing AICCI in the collection proceeding against Peterson. Whether or not the court specifically stated that it found a violation of rule 3-310(E) is irrelevant to whether Aguilar is entitled to attorney fees. The general rule is that an attorney disqualified for violating an ethical obligation is not entitled to fees. (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc., supra,* 52 Cal.App.4th at pp. 14, 16.)

Aguilar argues that this case, like *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000 [87 Cal.Rptr.2d 90], involved a minor technical violation of rule 3-310(E) due to its failure to obtain a waiver. This case is entirely unlike *Pringle.* There, the attorney drafted a fee agreement acknowledging potential conflicts of interest in her defense of both a corporation and an officer of that corporation in a sexual harassment lawsuit. The officer signed the agreement on his own behalf and on behalf of the corporation. Subsequently, the officer refused to pay attorney fees on the ground that the conflict waiver was invalid because he had signed it in both capacities. The court found that the attorney was entitled to fees, because the record was inadequate to ascertain if the purported violation of the rule was serious or "incompatible with the faithful discharge of her duties." (*Pringle, supra,* at pp. 1006–1007.) In contrast, here there was no mere technical violation of ethical rules asserted after the fact. The trial court determined that there was a disqualifying violation of ethical obligations. Consequently, here there is no genuine issue of material fact in this regard precluding summary judgment.

Aguilar next argues that there are disputed issues of material fact about whether, under rule 3-310(E), it disclosed its prior representation of Peterson to AICCI. Aguilar also asserts that there are issues of material fact regarding

---

[5] Aguilar concedes on appeal that "there has been . . . an order granting a motion to disqualify on confidentiality grounds . . . ." Contrary to Aguilar's contention, possession of confidential information about Peterson creates a conflict of interest here. (See *Goldstein v. Lees, supra,* 46 Cal.App.3d at pp. 619–620.)

whether there was consent and waiver on the part of AICCI. Regardless of whether Aguilar disclosed its prior representation of Peterson to AICCI, and even if it had obtained a waiver, there is no dispute that it did not obtain a waiver from Peterson, the former client. Accordingly, this is not an issue of material fact precluding summary judgment.

### B. *Equitable Entitlement to Attorney Fees*

Aguilar argues that it is entitled to its attorney fees based on equitable principles. Aguilar maintains that AICCI "was aware of the prior representation of [Peterson], either by actual or imputed knowledge," urging that "it was the knowledge by [AICCI] of the [Aguilar] knowledge of what made Peterson tick that made [AICCI] retain [Aguilar.]" Aguilar maintains that Pillsbury's knowledge in this regard was imputed to AICCI, and that consequently AICCI's "unclean hands" estop it from "reneg[ing] on paying attorneys' fees."

*Goldstein v. Lees, supra,* 46 Cal.App.3d 614, involved a similar situation. There, Kirshman, an attorney, had served as both outside counsel and executive vice-president, secretary and general counsel to Diodes, Inc. In these positions, he "became privy to its innermost secrets." (*Id.* at p. 617.) Lees, a director of Diodes, approached the attorney about the possibility of initiating a proxy solicitation to gain control of Diodes. Lees initially hired another law firm, but after two months hired Kirshman. There was "no question" that Kirshman was hired because of his " 'insight to the facts' " of Diodes. (*Id.* at pp. 617–618.) The court upheld Kirshman's disqualification and denied him attorney fees on the basis that there was a conflict of interest because "Kirshman accepted employment which surely at best must have tempted him to reveal or to improperly monopolize the confidences and secrets of his former client." (*Id.* at p. 619.) The court rejected the argument that this result unjustly enriched the defendants, noting that "there is no force to the objection that the result announced here will work a windfall for defendants. . . . Indeed, it is enough to say that '[c]ourts do not sit to give effect to . . . illegal contracts. The law is not to be subsidized to overthrow itself . . . .' " (*Id.* at pp. 623–624, fns. omitted, citing *Valentine v. Stewart* (1860) 15 Cal. 387, 405.)

Likewise here, even if AICCI knew that Aguilar had represented Peterson in the past and hired the firm because it knew "what made Peterson tick," that does not estop AICCI from asserting that Aguilar is not entitled to attorney fees.

## DISPOSITION

The judgment is affirmed.

Kay, P. J., and Rivera, J., concurred.