**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RYAN RODRIGUEZ, on behalf of
himself and all others similarly
situated; REENA B. FRAILICH, on
behalf of herself and all others
similarly situated; JENNIFER
BRAZEAL; LISA GINTZ; LOREDANA
NESCI; LORRAINE RIMSON; KARI
BREWER,

          *Plaintiffs-Appellees,*

            v.

SANDRA DISNER, Executor of the
Estate of Eliot G. Disner, as
successor-in-interest to Eliot G.
Disner and Disner Law
Corporation, Class Counsel,

            *Appellant.*

No. 10-55309

D.C. No.
2:05-cv-03222-
R-Mc

RYAN RODRIGUEZ, on behalf of himself and all others similarly situated; REENA B. FRAILICH, on behalf of herself and all others similarly situated; JENNIFER BRAZEAL; LISA GINTZ; LOREDANA NESCI; LORRAINE RIMSON; KARI BREWER,
              *Plaintiffs-Appellees,*
                    v.
McGUIREWOODS LLP,
                    *Appellant.*

No. 10-55342
No. 10-56730

D.C. No.
2:05-cv-03222-R-Mc

RYAN RODRIGUEZ, on behalf of himself and all others similarly situated; REENA B. FRAILICH, on behalf of herself and all others similarly situated; JENNIFER BRAZEAL; LISA GINTZ; LOREDANA NESCI; LORRAINE RIMSON; KARI BREWER,
              *Plaintiffs-Appellees,*
                    v.
DAVID FELDMAN; CAMERON GHARABIKLOU; EMILY GRANT; JEFF LANG; SARAH McDONALD; CARA PATTON; RACHEL SCHWARTZ; GREG THOMAS,
              *Objectors-Appellants.*

No. 10-56700

D.C. No.
2:05-cv-03222-R-Mc

RYAN RODRIGUEZ, on behalf of
himself and all others similarly
situated; REENA B. FRAILICH, on
behalf of herself and all others
similarly situated; JENNIFER
BRAZEAL; LISA GINTZ; LOREDANA
NESCI; LORRAINE RIMSON; KARI
BREWER,
                *Plaintiffs-Appellees,*

                        v.

JAMES JURANEK, Unnamed Class
Member; AUDREY JURANEK,
Unnamed Class Member; RICHARD
P. LE BLANC, III,
                *Objectors-Appellants.*

No. 10-56703
D.C. No.
2:05-cv-03222-
R-Mc

RYAN RODRIGUEZ, on behalf of
himself and all others similarly
situated; REENA B. FRAILICH, on
behalf of herself and all others
similarly situated; JENNIFER
BRAZEAL; LISA GINTZ; LOREDANA
NESCI; LORRAINE RIMSON; KARI
BREWER,
                *Plaintiffs-Appellees,*

                        v.

GEORGE SCHNEIDER, Class Member;
JONATHAN M. SLOMBA, Class
Member; JAMES PUNTUMAPANITCH,
Class Member; JUSTIN HEAD; RYAN
HELFRICH,
                *Objectors-Appellants.*

No. 10-56724
D.C. No.
2:05-cv-03222-
R-Mc

RYAN RODRIGUEZ, on behalf of
himself and all others similarly
situated; REENA B. FRAILICH, on
behalf of herself and all others
similarly situated; JENNIFER
BRAZEAL; LISA GINTZ; LOREDANA
NESCI; LORRAINE RIMSON; KARI
BREWER,
                    *Plaintiffs-Appellees,*

                    v.

AARON LUKOFF; JOHN PRENDERGAST;
DAVID ORANGE,
                    *Objectors-Appellants.*

No. 10-56737
D.C. No.
2:05-cv-03222-
R-Mc

RYAN RODRIGUEZ, on behalf of
himself and all others similarly
situated; REENA B. FRAILICH, on
behalf of herself and all others
similarly situated; JENNIFER
BRAZEAL; LISA GINTZ; LOREDANA
NESCI; LORRAINE RIMSON; KARI
BREWER,
                    *Plaintiffs-Appellees,*

                    v.

DAVID ORIOL, Unamed
Classmembers; JASON TINGLE;
JENNIFER BROWN MCELROY; DANIEL
M. SCHAFER; SARAH SIEGEL; EVANS
& MULLINIX, P.A.,
                    *Objectors-Appellants.*

No. 10-56803
D.C. No.
2:05-cv-03222-
R-Mc

Ryan Rodriguez, on behalf of
himself and all others similarly
situated; Reena B. Frailich, on
behalf of herself and all others
similarly situated; Jennifer
Brazeal; Lisa Gintz; Loredana
Nesci; Lorraine Rimson; Kari
Brewer,
           *Plaintiffs-Appellees,*

                 v.

Robert Gaudet, Jr.; Sandeep
Gopalan,
           *Objectors-Appellants.*

No. 10-57037

D.C. No.
2:05-cv-03222-
R-Mc

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
March 5, 2012*—Pasadena, California

Filed August 10, 2012

Before: Jerome Farris, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

*The panel unanimously concludes that Appeal Nos. 10-56700, 10-56703, 10-56737, 10-56803, and 10-57037 are suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Margaret A. Grignon, Reed Smith LLP, Los Angeles, California, for appellant Sandra Disner (Appeal No. 10-55309).

Terry W. Bird and Thomas R. Freeman (argued), Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, P.C., Los Angeles, California, and Sidney Kanazawa, McGuireWoods LLP, Los Angeles, California, for appellant McGuireWoods LLP (Appeal Nos. 10-55342, 10-56770).

John W. Davis, Law Office of John W. Davis, San Diego, California, and Steven F. Helfand, Helfand Law Offices, San Francisco, California, for objectors-appellants David Feldman, Cameron Gharabiklou, Emily Grant, Jeff Lang, Sarah McDonald, Cara Patton, Rachel Schwartz, and Greg Thomas (Appeal No. 10-56700).

Charles A. Sturm, Steele Sturm PLLC, Houston, Texas, for objectors-appellants James Juranek, Audrey Juranek, and Richard P. Le Blanc (Appeal No. 10-56703).

J. Garrett Kendrick and C. Benjamin Nutley (argued), Kendrick & Nutley, Pasadena, California, and John Pentz, Maynard, Massachusetts, for objectors-appellants George Schneider, Jonathan M. Slomba, James Puntumapanitch, Justin Head, and Ryan Helfrich (Appeal No. 10-56724).

Joshua R. Furman (argued), Joshua R. Furman Law Corp., Beverly Hills, California, and John M. Zimmerman, Law Offices of John M. Zimmerman, Seattle, Washington, for objectors-appellants Aaron Lukoff, John Prendergast, and David Orange (Appeal No. 10-56737).

J. Darrell Plamer, Law Offices of Darrell Plamer PC, Solana Beach, California, for objectors-appellants Evans & Mullinix, P.A., David Oriol, Sarah Siegel, Jennifer Brown McElroy, Daniel Schafer, and Jason Tingle (Appeal No. 10-56803).

Robert J. Gaudet, Jr., The Hague, The Netherlands, and Sandeep Gopalan, Maynooth, Ireland, appearing pro se (Appeal No. 10-57037).

## OPINION

IKUTA, Circuit Judge:

These thirteen consolidated appeals brought by class counsel[1] and six groups of objectors (collectively, "Objectors")[2] challenge the district court's decisions regarding attorney fee awards after the settlement of an antitrust class action against West Publishing Corp. and Kaplan, Inc. In this opinion, we address nine separate appeals, which challenge the propriety of the district court's decision to deny attorneys' fees to class counsel McGuireWoods on account of a conflict of interest and to deny fees to objectors for their efforts in securing that decision.[3] Because the district court's decisions were not legally erroneous, and in light of the deference we give to such determinations, we affirm the respective fee orders with the exception of the order denying fees to the Schneider Objectors, which we vacate and remand for further proceedings consistent with this decision.

---

[1]McGuireWoods LLP and Zwerling Schachter & Zwerling LLP. Sandra Disner, as successor in interest to Eliot Disner, a former partner of McGuireWoods, joins in and adopts class counsel McGuireWoods's briefing.

[2]David Feldman, Cameron Gharabiklou, Emily Grant, Jeff Lang, Sarah McDonald, Cara Patton, Rachel Schwartz, and Greg Thomas (collectively, the "Feldman Objectors"); James Juranek, Audrey Juranek, and Richard P. Le Blanc (collectively, the "Juranek Objectors"); George Schneider, Jonathan M. Slomba, James Puntumapanitch, Justin Head, and Ryan Helfrich (collectively, the "Schneider Objectors"); Aaron Lukoff, John Prendergast, and David Orange (collectively, the "Lukoff Objectors"); Evans & Mullinix, P.A., David Oriol, Sarah Siegel, Jennifer Brown McElroy, Daniel Schafer, and Jason Tingle (collectively, the "Oriol Objectors"); and Robert J. Gaudet Jr. and Sandeep Gopalan. We have considered all arguments raised by the objectors, and any argument not specifically mentioned here is rejected.

[3]We address the remaining four appeals in concurrently filed memorandum dispositions.

## I

This case is before us for the second time. See *Rodriguez v. W. Publ'g Corp.* (*Rodriguez I*), 563 F.3d 948 (9th Cir. 2009). Because the facts are laid out at length in that opinion, we describe them only briefly.

## A

At the onset of litigation, the law firm of Van Etten Suzumoto & Becket LLP (which later merged with McGuire-Woods LLC) entered into "incentive agreements" with five plaintiffs, Ryan Rodriguez, Reena Frailich, Loredana Nesci, Jennifer Brazeal, and Lisa Gintz, in connection with a potential antitrust class action against West Publishing. *Id.* at 957. In these agreements, each of these clients authorized Van Etten to apply to the court for a fee award based on recovery against West Publishing, and Van Etten agreed to seek incentive compensation for each client in an amount equal to between $10,000 and $75,000, depending on the value of the settlement or verdict. *Id.* Specifically, the incentive agreements provided that, if the settlement amount was greater than or equal to $500,000, class counsel would seek a $10,000 award for each client who signed an agreement; if the settlement amount were $1.5 million or more, counsel would seek a $25,000 award; if it were $5 million or more, counsel would seek $50,000; and if it were $10 million or more, counsel would seek $75,000. *Id.*

Plaintiffs brought federal antitrust claims against BAR/BRI (a subsidiary of West Publishing at that time) and Kaplan, for their activities in the market for bar preparation courses. *Id.* at 955. The operative complaint alleged that West Publishing illegally acquired the assets of its direct competitor West Bar Review in violation of Section 7 of the Clayton Act, unlawfully conspired with Kaplan to prevent competition in the market for full-service bar review courses in violation of Section 1 of the Sherman Act, and wrongfully monopolized the

full-service bar review course market in violation of Section 2 of the Sherman Act. *Id.* at 955-56.

The district court certified a nationwide class comprised of all persons who purchased a bar review course from BAR/BRI between August 1, 1997 and July 31, 2006. *Id.* at 956. Plaintiffs Rodriguez, Frailich, Nesci, Brazeal, and Gintz, who had signed incentive agreements, were designated as class representatives, and McGuireWoods was appointed class counsel. *Id.* at 955. Two other class representatives, Kari Brewer and Lorraine Rimson, did not enter into incentive agreements, and were separately represented by the law firms Zwerling Schachter and Finkelstein Thompson LLP. *Id.* at 957-58.

The parties settled shortly before trial. Under the settlement agreement, West Publishing and Kaplan agreed to pay $49 million into a settlement fund that would be allocated pro rata to class members, with 25 percent of the fund set aside for attorneys' fees. *Id.* at 956-57. Before the final fairness hearing, class counsel filed motions seeking $325,000 in incentive awards for the class representatives and seeking fees for their representation of the class. *Id.* at 957, 963.

Multiple nonnamed members of the class challenged the fairness, reasonableness, and adequacy of the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and objected to the applications for $325,000 in incentive awards for the class representatives and to class counsel's fee request. These class members, organized into groups of objectors, were also represented by counsel. *Id.* at 957-58. The Schneider Objectors argued that the court should reduce McGuireWoods's fee award because the incentive agreements created a conflict of interest between class counsel and the five representatives who had entered into the agreements, on

the one hand, and the remaining members of the class, on the other.[4]

On September 10, 2007, the district court approved the parties' settlement agreement, holding that the settlement was fair, adequate, and reasonable despite the conflict of interest between class representatives and class members. *Id.* at 958. The court awarded McGuireWoods over $7 million (subject to further increases for post-settlement work), the full amount of the requested fees. In a separate order, the district court declined to approve incentive awards totaling $325,000 to the class representatives, finding that the incentive agreements created an appearance of impropriety, violated the ethics rule against fee-sharing with non-lawyers, and created conflicts of interest between the class representatives and unnamed class members. *Id.* at 959. The court also denied fees to the objectors' counsel because they "did not add anything to the court's order denying" the motion for incentive awards. *Id.* at 958. Several groups of objectors appealed.

B

The respective appeals came before this court in *Rodriguez I*. There, we affirmed the class action settlement as fair and adequate, but reversed and remanded the district court's orders granting class counsel attorneys' fees and denying fees to objectors' counsel. *Id.* at 968-69. The incentive agreements between McGuireWoods and five class representatives played a central role in our decision.

We first considered the incentive agreements in the context of determining whether the settlement agreement "should

---

[4]The Feldman Objectors argued that the incentive awards requested on behalf of the class representatives should be denied, but did not argue that the incentive agreements affected class counsel's entitlement to fees. None of the other objectors challenged the incentive agreements during the settlement hearings or before this court in *Rodriguez I*.

have been rejected because the incentive agreements pre-
vented the class representatives from providing adequate rep-
resentation," *id.* at 958, as required to certify a class. *See* Fed.
R. Civ. P. 23(a)(4) ("One or more members of a class may sue
or be sued as representative parties on behalf of all members
only if: . . . the representative parties will fairly and ade-
quately protect the interests of the class."). We expressed dis-
approval of these incentive agreements, and stated that they
"created an unacceptable disconnect between the interests of
the contracting representatives and class counsel, on the one
hand, and members of the class on the other." *Rodriguez I*,
563 F.3d at 960. We noted that class counsel's agreement to
request incentive awards based on the amount of recovery
"put class counsel and the contracting class representatives
into a conflict position from day one," and that the effect of
the incentive agreements "was to make the contracting class
representatives' interests actually different from the class's
interests in settling a case instead of trying it to verdict, seek-
ing injunctive relief, and insisting on compensation greater
than $10 million." *Id.* at 959.

Notwithstanding these serious concerns, we affirmed the
district court's approval of the class action settlement. We
held that even though "the ex ante incentive agreements cre-
ated conflicts among the five contracting class representa-
tives, their counsel [McGuireWoods], and the rest of the
class," the adequacy of representation was not a basis to reject
the settlement because "there were two other class representa-
tives who had no incentive agreements and whose separate
counsel [Zwerling Schachter and Finkelstein Thompson] were
not conflicted." *Id.* at 955.

We next considered the incentive agreements in the context
of evaluating objectors' challenge to the award of attorneys'
fees to class counsel. We expressed concern that "the district
court nowhere appears to have considered the effect on the
award of attorney's fees of the conflict of interest that resulted
from the incentive agreements." *Id.* at 967. We explained that

" '[s]imultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California and grounds for disqualification,' " and that " '[a]n attorney cannot recover fees for such conflicting representation.' " *Id.* at 967-68 (quoting *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998)). Although we did not express an opinion "on the impact of these principles on the fees request in this case," we stated that it was "appropriate for the district court to consider whether counsel could represent both the class representatives with whom there was an incentive agreement, and absentee class members, without affecting the entitlement to fees." *Id.* at 968. Accordingly, we reversed the award of attorneys' fees to McGuireWoods and remanded for the district court "to consider in the first instance the effect, if any, of the conflict arising out of the incentive agreements on the request by class counsel for an attorney's fee award." *Id.*

Finally, we considered certain objectors' argument that the district court improperly denied them fees attributable to their successful challenge to the $325,000 in incentive awards to class representatives. We held that the district court's rejection of objectors' fee requests on the ground that the objectors "did not add anything" to the court's decision to deny incentive awards was "clearly erroneous," because the district court did not consider the impropriety of the incentive agreements until the objectors raised this argument; only then did the district court reject the incentive awards. *Id.* at 963. "The net effect was to leave $325,000 in the settlement fund—for distribution to the class as a whole—that otherwise would have gone to the class representatives." *Id.* Accordingly, we remanded for the district court "to reconsider the extent to which Objectors added value that increased the fund or substantially benefitted the class members, and to award attorney's fees accordingly." *Id.*

## C

On remand, the district court first considered the objectors' challenge to the award of attorneys' fees to class counsel McGuireWoods.[5] Relying on our decision in *Rodriguez I* and *Image Technical* (which *Rodriguez I* had cited with approval), the court concluded that the incentive agreements gave rise to a conflict of interest between the class representatives and the other members of the class that "tainted McGuireWoods's representation," and that, under California law, such a conflict "constitutes an automatic ethics violation that results in the forfeiture of attorneys' fees." Accordingly, the district court held that McGuireWoods was not entitled to any attorneys' fees for its representation of the class.

In response to McGuireWoods's motion to reconsider, the district court reaffirmed its ruling, stating that the "conflict of interest constituted an egregious breach of McGuireWoods' ethical duties, and thus further justif[ied] the forfeiture of McGuireWoods' fees for the period this conflict was in effect." The district court awarded McGuireWoods the costs and expenses it incurred in bringing the action, and a quantum meruit award of $500,000 for services provided after the court's rejection of the incentive awards, at which point the conflict of interest had come to an end. McGuireWoods timely appealed.

Following this decision denying fees to McGuireWoods, several objectors' counsel filed additional fee applications. The objectors reasoned that the elimination of fees to McGuireWoods meant class members would receive more from the settlement fund, and thus the objectors' efforts benefited the class. The district court denied all objectors' fee

---

[5]The district court also ruled on certain objectors' motions for attorneys' fees for their efforts in challenging the class representatives' requests for $325,000 in incentive awards. We address the appeals from this ruling in a concurrently filed memorandum disposition.

requests, reasoning that it had relied on its own analysis of the applicable case law in reaching its determination that McGuireWoods was not entitled to fees due to the conflict of interest, and that "the work performed by the objectors' counsel conferred no benefit on the class" and "was merely cumulative." Six groups of objectors timely appealed.

## II

We review a district court's decision to grant or deny attorneys' fees for abuse of discretion, *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994), and must affirm unless the district court applied the wrong legal standard or its findings of fact were illogical, implausible, or without support in the record, *see United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). We generally give broad deference to the district court's determinations on fee awards because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## III

We turn first to McGuireWoods's challenge to the denial of its fees on account of an ethical violation.

### A

**[1]** In class action litigation, a district court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). If there is no contractual or statutory basis to award attorneys' fees in a class action case, a court may rely on the "common fund doctrine," a traditional equitable doctrine "rooted in concepts of quasi-contract and restitution." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 770 (9th Cir. 1977). Federal courts award attorneys' fees under the common fund

doctrine as a matter of federal common law, based on "the historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939).**[6]** Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The guiding principle is that attorneys' fees "be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

**[2]** In determining what fees are reasonable, a district court may consider a lawyer's misconduct, which affects the value of the lawyer's services. *See, e.g.*, *Image Technical*, 136 F.3d at 1358. A court has broad equitable power to deny attorneys' fees (or to require an attorney to disgorge fees already received) when an attorney represents clients with conflicting interests. *See, e.g.*, *Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917, 920 (2d Cir. 1950) ("Certainly by the beginning of the Seventeenth Century it had become a common-place that an attorney must not represent opposed interests; and the usual consequence has been that he is debarred from receiving any fee from either [client], no matter how successful his labors.").

**[3]** For example, we have held that a law firm's representation of antitrust plaintiffs against a defendant whom the law firm represented in an unrelated matter constituted a "clear violation of the applicable ethical rules," *Image Technical*,

---

**[6]**Therefore, we disagree with McGuireWoods's assumption that the district court's decision regarding the award of attorneys' fees is controlled by California law. Because the litigation in this case alleged violation of federal antitrust law, the award of attorneys' fees is governed by federal equitable doctrines, and state decisions are merely persuasive authority. If, on the other hand, we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995).

*136 F.3d a*t 1359, and that "an attorney cannot recover fees for such conflicting representation . . . . even where, as here, the matters in which the firm represents the clients with conflicting interests are unrelated," *id.* at 1358. We reasoned that "payment is not due for services not properly performed," *id.* (quoting *Cal Pak Delivery, Inc. v. United Parcel Serv.*, 60 Cal. Rptr. 2d 207, 215 n.2 (1997)), and that it "compounds injustice" to allow the attorney to recover fees from the very party injured by the ethical violation, *id.* at 1359. *Similarly, in United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574 (9th Cir. 1996), a qui tam action under the False Claims Act, we noted that a reasonable fee for an attorney who represents clients with conflicting interests is "zero" at least "when the violation is one that pervades the whole relationship." *Id.* at 579.

Our sister circuits are in accord. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (affirming the district court's decision to deny attorneys' fees and costs to a firm that had been disqualified for a conflict of interest, reasoning that the district court "could properly deny the firm any recovery for services rendered prior to the disqualification, even if those services conferred some benefit on the class"); *see also So v. Suchanek*, 670 F.3d 1304, 1310-11 (D.C. Cir. 2012) (holding that the district court has broad equitable power to require counsel who represented clients with conflicting interests to disgorge fees); *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 533 (3d Cir. 1982) (upholding the disgorgement of attorneys' fees where "breach of professional ethics is so egregious that the need for attorney discipline and deterrence of future improprieties of that type outweighs" the concerns of providing "the client with a windfall" and depriving the "attorney of fees earned while acting ethically").

**[4]** Although the application of the common fund doctrine is a matter of federal courts' equitable powers, *see Van Gemert*, 444 U.S. at 478; *Wininger v. SI Mgmt. L.P.*, 301 F.3d

1115, 1120-21 (9th Cir. 2002), we have frequently looked to state law for guidance in determining when an ethical violation affects an attorney's entitlement to fees, *see Rodriguez I*, 563 F.3d at 967-68 (citing California cases for the proposition that an attorney cannot recover fees for services provided after a conflict of interest arose); *Image Technical*, 136 F.3d at 1358 (same). California courts have affirmed a trial court's decision to deny fees to attorneys laboring under an actual conflict of interest, such as where an attorney represented two entities with adverse interests entering a business deal without informed consent, *Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765, 792 (Ct. App. 2011), a law firm represented both wife and husband in marital dissolution proceedings, *Jeffry v. Pounds*, 136 Cal. Rptr. 373, 377 (Ct. App. 1977), and an attorney undertook to represent a client in a proxy fight with a corporation for which the attorney had been general counsel, *Goldstein v. Lees*, 120 Cal. Rptr. 253, 254-55 (Ct. App. 1975). By contrast, where the ethical violation is less severe, for example where the attorney represented clients with only a potential conflict of interest, California courts have affirmed decisions to award attorneys some fees depending on the equities. *See Pringle v. La Chapelle*, 87 Cal. Rptr. 2d 90, 94 (1999). In *Pringle*, the state court held that a trial court may consider " 'the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies' " in determining whether and to what extent fee forfeiture is appropriate. *Id.* at 94 n.5 (quoting Restatement (Third) of Law Governing Lawyers § 49 (Tentative Draft No. 1, 1996)). The egregiousness of the violation is often the critical factor. *See Mardirossian & Assocs., Inc. v. Ersoff*, 62 Cal. Rptr. 3d 665, 682 (Ct. App. 2007); *see also Paul W. Vapnek et al., California Practice Guide: Professional Responsibility*, ch. 4 ¶ 4:238; ch. 5 ¶¶ 5:1026, 5:1026.3 (2011). We are not aware, however, of any California case that has overturned a trial court's decision to deny attorneys' fees to an attorney engaged in dual representation of clients

with actual conflicts of interest, rather than a potential one as in *Pringle*.

We apply these equitable principles even more assiduously in common fund class action cases, such as this one, because "the district court has a special duty to protect the interests of the class," *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir 2003), and must "act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is," *In re Wash. Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*), 19 F.3d 1291, 1302 (9th Cir. 1994) (internal quotation marks omitted); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). In serving this "fiduciary role for the class," the district court must consider whether class counsel has properly discharged its duty of loyalty to absent class members. *Rodriguez I*, 563 F.3d at 968. As we noted in *Rodriguez I*, " '[t]he responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.' " *Id.* (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)). This general principle has exceptions; we have acknowledged that "conflicts of interest among class members are not uncommon and arise for many different reasons," *id.*, and a court may tolerate certain technical conflicts in order to permit attorneys who are familiar with the litigation to continue to represent the class, *see, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986). But a court may appropriately determine that a conflict of interest affects class counsel's entitlement to fees where the conflict was not one "that developed beyond the control or perception of class counsel," and where the conflict was never disclosed to the district court "so that it could take steps to protect the interests of absentee class members." *Rodriguez I*, 563 F.3d at 958; *cf. In Re Agent Orange*, 800 F.2d at 18 (observing that " 'when a potential conflict arises between the named plaintiffs and the rest of the class, . . . . the attorney's duty to the class requires him to point out conflicts to the

court so that the court may take appropriate steps to protect the interests of absentee class members' " (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978)).

**[5]** In sum, under long-standing equitable principles, a district court has broad discretion to deny fees to an attorney who commits an ethical violation. In making such a ruling, the district court may consider the extent of the misconduct, including its gravity, timing, willfulness, and effect on the various services performed by the lawyer, and other threatened or actual harm to the client. *See* Restatement (Third) of Law Governing Lawyers § 37 (2000). The representation of clients with conflicting interests and without informed consent is a particularly egregious ethical violation that may be a proper basis for complete denial of fees. *See Image Technical*, 136 F.3d at 1358-59; *see also Petrovic*, 200 F.3d at 1156. A district court has a special obligation to consider these equitable principles at the fee-setting stage in common fund class action cases, given the district court's fiduciary role to protect absent class members. *Rodriguez I*, 563 F.3d at 968.

B

Applying these principles here, we first confirm the district court's conclusion that McGuireWoods committed an ethical violation. Indeed, McGuireWoods does not dispute that its representation of conflicting interests constituted an ethical violation. Nor could it.

**[6]** Under the district court's local rules, California law governs a district court's determination whether an ethical violation has occurred.[7] Rule 3-310(C) of the California Rules

---

[7]Central District Local Rule 83-3.1.2 provides that:

"the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and

of Professional Conduct generally prohibits the representation of clients with actual or potential conflicts of interest absent an express waiver.[8] The interests of clients "actually conflict" for purposes of Rule 3-310 "whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other." *Gilbert v. Nat'l Corp. for Housing P'ships*, 84 Cal. Rptr. 2d 204, 212 (Ct. App. 1999). "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of loyalty." *Flatt v. Super. Ct.*, 885 P.2d 950, 955 (Cal. 1994). A potential conflict exists whenever a lawyer's representation of one client might, in the future, become less effective by reason of his representation of the other. *See id.* at 954.

[7] In *Rodriguez I* we indicated that the incentive agreements created an actual conflict of interest between the named members and class counsel, on the one hand, and the other members of the class, on the other. We explained that the

the decisions of any court applicable thereto . . . . are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance."

However, the decision whether to sanction or impose other discipline is a question of federal law. *See, e.g.*, C.D. Cal. R. 83-3.1.3.

[8]Rule 3-310(C) of the California Rules of Professional Conduct states:

A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

incentive agreements "put class counsel and the contracting class representatives into a conflict position from day one" because "[b]y tying their compensation—in advance—to a sliding scale based on the amount recovered, the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class." *Rodriguez I*, 563 F.3d at 959. This meant that "once the threshold cash settlement was met, the agreements created a disincentive to go to trial; going to trial would put their $75,000 at risk in return for only a marginal individual gain even if the verdict were significantly greater than the settlement." *Id.* at 959-60. We then noted that under California law, "[s]imultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California and grounds for disqualification," *id.* at 960 (quoting *Image Technical*, 136 F.3d at 1358), and faulted the district court for not considering "the effect on the award of attorney's fees of the conflict of interest that resulted from the incentive agreements," *id.* at 967.

**[8]** We are bound by our decision in *Rodriguez I*, both as law of the case and law of the circuit, *see Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), and therefore conclude that the district court could reasonably have found that, by entering into the incentive agreements without informed consent, McGuireWoods engaged in conflicted representation, as defined in Rule 3-310. Therefore, the district court did not err in determining that McGuireWoods had committed an ethical violation under its local rules.

## C

We next consider whether the district court abused its discretion in concluding that McGuireWoods was not entitled to any fees as a result of this ethical violation. McGuireWoods argues that the district court erred in concluding that a conflict of interest resulted in an automatic forfeiture of legal fees. Relying on *Pringle*, McGuireWoods asserts that a court may

not deny counsel fees where the client suffered no injury as a result of an ethical violation, unless counsel engaged in egregious conduct by knowingly or willfully violating an ethical rule. *Pringle*, 87 Cal. Rptr. 2d at 94. *Under the Pringle* standard, McGuireWoods argues, it was improper for the district court to deny all fees, because the class suffered no hardship as a result of the conflict of interest and the record provided no basis for holding that McGuireWoods had knowingly or willfully disregarded established ethical rules.

We disagree with McGuireWoods's analysis. As explained above, although a federal court may consider California cases as persuasive authority, the district court's award of attorneys' fees in this case is guided by "the historic equity jurisdiction of the federal courts," *Sprague*, 307 U.S. at 164, and the district court was not bound by *Pringle* or other state law. In light of federal equitable principles, we cannot say the district court abused its discretion in denying McGuireWoods all fees.

**[9]** First, the district court here could reasonably determine that by entering into the incentive agreements that created a conflict of interest "from day one," *Rodriguez I*, 563 F.3d at 959, McGuireWoods did not properly discharge its duty of loyalty to absent class members. As *Rodriguez I* explained, this was not a case where the conflict of interest developed during the course of litigation, or that developed "beyond the control or perception of class counsel"; rather, it was a conflict that "was inserted into the retainer agreement." *Id.* at 968. A knowing and willful creation of a conflict of interest is egregious conduct even under the standard for fee forfeiture under the test enunciated in *Pringle*, which McGuireWoods urges us to adopt. 87 Cal. Rptr. 2d at 94 (explaining that the denial of attorneys' fees may be appropriate where "the purported violation of the rules was serious, if any act was inconsistent with the character of the profession, or if there was an irreconcilable conflict"). Moreover, McGuireWoods took no steps "to disclose their agreement to the court, and to the

class," in violation of its "fiduciary duties to the class and duty of candor to the court." *Rodriguez I*, 563 F.3d at 959. Accordingly, the district court could reasonably conclude that because McGuireWoods knowingly and willfully represented conflicting interests, its services were "not properly performed," *Image Technical*, 136 F.3d at 1358, and therefore it was not entitled to fees.

**[10]** McGuireWoods argues that fee forfeiture was improper here because the incentive agreements did not lead to an actual injury to the class: the class representatives did not settle for just $10 million (which would have given the class representatives the maximum amount of incentive award), but achieved a $49 million settlement. The district court could have considered this factor, among others, in exercising its equitable discretion, and could have reasonably concluded that McGuireWoods was entitled to some attorneys' fees for its efforts and notable success in this case. But our conclusion that the district court could have reasonably taken this approach does not make its failure to do so an abuse of discretion. A district court has the primary responsibility for determining a reasonable fee award and must weigh any benefits McGuireWoods conferred on the class against the pervasive conflict of interest caused by the incentive agreements with class representatives. Given our deferential review of the district court's fee determinations, and in light of *Image Technical* and *Rodriguez I*, we cannot say the district court abused its discretion in denying all fees. We therefore affirm the district court's decision.[9]

IV

We next consider the objectors' applications for fees based on their contributions to the district court's decision to award no fees to McGuireWoods. Because we uphold the district

---

[9]Because Sarah Disner joins in and adopts all parts of McGuireWoods's Brief, we also dismiss her appeal.

court's decision on forfeiture, we must consider the objectors' challenge to the district court's denial of their fee applications.

A

Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation. Nonnamed members of a certified class have the authority to object to the fairness of a settlement at the fairness hearing required by Rule 23(e) of the Federal Rules of Civil Procedure, as well as appeal the court's decision to ignore their objections. *See Devlin v. Scardelletti*, 536 U.S. 1, 8-9, 14 (2002).

**[11]** If these objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002). Conversely, objectors who do "not increase the fund or otherwise substantially benefit the class members" are not entitled to fees, even if they bring "about minor procedural changes in the settlement agreement." *Id.* at 1051; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (explaining that "[t]he principles of restitution that authorize" the award of fees to objectors "also require, however, that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class"). Nor is it error to deny fees to objectors whose work is duplicative, or who merely echo each others' arguments and confer no unique benefit to the class. *See Reynolds*, 288 F.3d at 288-89; *see also WPPSS*, 19 F.3d at 1298.

B

**[12]** The district court did not abuse its discretion in denying attorneys' fees to the Feldman, Juranek, Lukoff, Oriol, or

Gaudet objectors. These objectors did not confer any material benefit on the class though their appeals in *Rodriguez I*. To the contrary, in *Rodriguez I* we rejected the Feldman Objectors' challenges to the inadequacy of the class notice and class counsel, the Juranek Objectors' argument regarding the inadequacy of the settlement and the use of the cy pres doctrine, the Oriol Objectors' contention that the attorney fee award was excessive, and Gaudet and Gopalan's argument that the district court should have considered treble damages. *See Rodriguez I*, 563 F.3d at 962-68. The Lukoff Objectors did not participate in the *Rodriguez I* appeal, and therefore did not render any ascertainable benefit to the class on this basis. On remand, the Feldman, Juranek, Lukoff, Oriol, and Gaudet objectors filed briefs capitalizing on arguments already made by the Schneider Objectors regarding why class counsel's fees should be reduced. With respect to these efforts, we agree with the district court that, where objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the class, they are not entitled to an award premised on equitable principles. *See Vizcaino*, 290 F.3d at 1051-52.

## C

**[13]** Finally, we turn to the arguments of the attorneys for the Schneider Objectors, who claim their efforts were instrumental in causing the district court to deny fees to class counsel. The record shows that the Schneider Objectors first brought the incentive agreements to the district court's attention. These objectors argued in *Rodriguez I* that the incentive agreements implicated McGuireWoods's entitlement to fees, and briefed the same issue on remand to both the district court and to us. Our decision in *Rodriguez I* acknowledged the serious implications of McGuireWoods's conflict of interest, and remanded to the district court with instructions to consider the effect of the incentive agreements on McGuireWoods's entitlement to fees. 563 F.3d at 969. Consistent with the Schneider Objectors' arguments, the district court determined on

remand that McGuireWoods was not entitled to fees, a decision we now affirm, resulting in direct savings to the class in the amount McGuireWoods would have otherwise received.

The district court concluded that the Schneider Objectors did not add anything because the district court relied on "its own analysis of the case law laid out by the Ninth Circuit" in *Rodriguez I*. Based on our review of the record, this finding is a clear error. Although we do not doubt that the district court made its own interpretation of our decision in *Rodriguez I* and applied that interpretation to the facts before it, the district court failed to consider that our ruling in *Rodriguez I* was a response to the Schneider Objectors' arguments on appeal. Accordingly, we remand for the district court to calculate the appropriate amount of attorneys' fees that should be awarded to counsel for the Schneider Objectors in light of the benefit they conferred on the class.[10]

Our determination that the district court clearly erred in denying fees to the Schneider Objectors is consistent with our similar ruling in *Rodriguez I*. In that case, we considered the district court's decision to deny fees to the objectors who had first challenged the $325,000 in incentive awards to the class representatives, a challenge which directly led to the district court's rejection of the $325,000 award. *See Rodriguez I*, 563 F.3d at 963. We held that the district court clearly erred in ruling that the objectors' actions "did not add anything" to its decision to deny incentive awards, given that the court had not focused on the incentive agreements before the objectors raised the issue. *Id.* The same analysis applies here.

**[14]** Because the district court abused its discretion by

---

[10]Relying on *In re Synthroid Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003), the Schneider Objectors ask us to calculate the appropriate award of attorneys' fees, rather than remanding this determination to the district court. Because the district court is in the best position to make such equitable determinations in the first instance, we decline to do so.

denying attorneys' fees to the Schneider Objectors on the ground that the court relied on "its own analysis of the case law," we vacate that fee order and remand for further proceedings consistent with this opinion.[11]

V

In awarding attorneys' fees from the common fund generated by litigation, courts are bound by traditional principles of equity and we must review awards to class counsel and objectors in that light. *See Van Gemert*, 444 U.S. at 478. We conclude that the district court did not abuse its discretion in declining to award fees to McGuireWoods from the common fund on the ground that its representation of conflicting interests made it undeserving of such compensation. Therefore, we affirm the district court's decision. We conclude the district court abused its discretion in not awarding attorneys' fees to the Schneider Objectors for their work leading to the forfeiture of McGuireWoods's fees, and therefore vacate the district court's determination and remand for further

---

[11]We grant the Schneider Objectors' requests for judicial notice of briefs filed in *Rodriguez I*. *See Corder v. Gates*, 104 F.3d 247, 248 n.1 (9th Cir. 1996).

We reject class counsel's argument that the Schneider Objectors lack standing to appeal the order denying their request for fees because they did not file a claim to receive a share of the settlement proceeds. Even assuming that none of the Schneider Objectors submitted a claim, this argument fails because an attorney who confers a benefit on the class is entitled to fees based on equitable principles of unjust enrichment, and has standing to challenge the denial of such fees, regardless whether the attorney's client will receive any of the savings. *See Class Plaintiffs*, 19 F.3d at 1307-08 (addressing whether attorneys in related state action were entitled to fees for services benefiting the class in federal action). While it is true that objectors who do not participate in a settlement lack standing to challenge class counsel's (as opposed to objectors') fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury, *see Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1128 (9th Cir. 2002), class counsel does not make this argument.

consideration in light of this decision. We affirm the district court on its denial of fees to the other objectors.[12]

**AFFIRMED (Nos. 10-55309, 10-55342, 10-56700, 10-56703, 10-56730, 10-56737, 10-56803, 10-57037). VACATED AND REMANDED (No. 10-56724).**

---

[12]We reject the argument raised by the Lukoff Objectors that the district court abused its discretion by awarding $500,000 to McGuireWoods for work performed after July 2007, the date on which the district court refused to honor the incentive agreements and denied the class representatives' requests for incentive awards. The district court properly determined that its rejection of the incentive awards cured any conflict of interest and that McGuireWoods's services thereafter were properly performed and conferred a benefit on the class. *See, e.g.*, *Jeffry*, 136 Cal. Rptr. at 377.