**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 2 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANGEL MORENO AND CARMELITA MORENO, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> WELLS FARGO, N.A.; AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, FORMERLY KNOWN AS UNION SECURITY LIFE INSURANCE COMPANY <br><br> Defendants - Appellees. | No. 13-17615 <br><br> D.C. No. 2:13-cv-00972-PHX-SRB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted May 10, 2016
San Francisco, California

Before: IKUTA and WATFORD, Circuit Judges, and WATSON, District Judge.[**]

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]   The Honorable Derrick Kahala Watson, District Judge for the U.S. District Court for the District of Hawaii, sitting by designation.

Plaintiffs Angel Moreno and Carmelita Moreno appeal from the dismissal of their amended complaint, which alleged claims under Arizona law against Defendants Wells Fargo, N.A. (Wells Fargo) and American Bankers Life Assurance Company of Florida (American Bankers). The Morenos' claims included those for breach of the duty of good faith and fair dealing, breach of contract, consumer fraud, and unfair and deceptive acts and practices in the business of insurance. The Morenos also appeal from the district court's judgment awarding attorneys' fees to defendants. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. The district court did not err in dismissing the Morenos' claims for lack of proximately caused damages. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) ("We review the district court's grant of a motion to dismiss *de novo*."). This case arises from a home loan that the Morenos obtained through Wells Fargo. In conjunction with this loan, the Morenos elected to purchase disability insurance coverage from Union Security Life Insurance Company, now known as American Bankers. The insurance policy at issue provided that coverage would terminate if and when: "You are considered in default under the terms of your debt agreement with the Creditor, or in default with your monthly insurance premium." It is undisputed that the Morenos failed to timely make full mortgage and insurance premium payments beginning in April 2012, several months prior to Wells Fargo's

2

August 20, 2012 letter notifying the Morenos that their insurance coverage had ended. Accordingly, the Morenos' failure to make their payments caused them to lose their insurance coverage, not any act or omission by defendants.

To be sure, Wells Fargo's Truth in Lending Disclosure for Optional Credit Insurance provided that the Morenos would be notified prior to termination. As such, the Morenos contend that had they been notified prior to termination, they would have corrected the deficiency. However, neither the disclosure nor the insurance policy provided a right to cure or to reinstatement, and the statutory right to cure under Arizona law does not apply to insurance agreements. *See* Ariz. Rev. Stat. § 33-813 (requiring lenders to permit reinstatement of a deed of trust following default under certain circumstances). Accordingly, it would not have been reasonable for the Morenos to expect that a right to cure existed.

The parties do not dispute that Mr. Moreno became disabled in December 2012. Nor do the parties dispute that the Morenos seek coverage under the policy in question beginning at that time. The Morenos' disability insurance coverage, however, terminated several months before Mr. Moreno's disabling event and, therefore, before any coverage rights under their policy would have accrued. As a result, any failure by defendants to provide prompt notice of termination in April

2012 when the Morenos first failed to make full mortgage and insurance premium payments did not cause the Morenos' loss.

Because the Morenos cannot overcome their causation problem, any amendment of the complaint would have been futile. The district court did not abuse its discretion by denying leave to amend. *See Johnson v. Buckley*, 356 F.3d 1067, 1077-78 (9th Cir. 2004).

2. Nor did the district court abuse its discretion in awarding attorneys' fees. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012). The district court considered the appropriate factors and made the necessary findings. *See Am. Const. Corp. v. Philadelphia Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1106-07 (D. Ariz. 2009) (listing relevant factors for court to consider in awarding attorneys' fees); SER 2-5 (district court's evaluation of factors). The Morenos' contention that the district court did not give sufficient consideration to their financial condition is unavailing. The district court acknowledged and discussed the Morenos' financial condition (*see* SER 3) and dramatically lowered the attorneys' fees award sought by each defendant as a result.

**AFFIRMED**.

*Moreno v. Wells Fargo Bank, N.A., et al.*, No. 13-17615

WATFORD, Circuit Judge, dissenting:

When the Morenos took out a mortgage with Wells Fargo in 2006, they also bought an insurance policy to ensure that they could pay the mortgage in the event that either of them became disabled. Wells Fargo sold the Morenos the policy on behalf of defendant American Bankers Life Assurance Company of Florida (ABLAC). The policy stated that if the Morenos failed to pay either the monthly mortgage payment or the insurance premium in full when due, their insurance coverage would "stop." But at the time the Morenos bought the policy, Wells Fargo, acting as ABLAC's agent, told them in writing, "You will be notified prior to termination." Under Arizona's "reasonable expectations" doctrine, that assurance became part of the policy, even if other provisions of the policy contradicted it. *See Gordinier v. Aetna Casualty & Surety Co.*, 742 P.2d 277, 283–84 (Ariz. 1987); *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 682 P.2d 388, 396–97 (Ariz. 1984).

A reasonable consumer, not trained in the technicalities of the law, would understand the statement "You will be notified prior to termination" to mean: If I'm short on a payment, or late in making a payment, my policy won't be terminated automatically. Instead, I will be given notice prior to termination so that I can make up the shortfall (or send the payment in by a specified date) before

my policy will be cancelled outright. No reasonable consumer would understand the assurance to mean that I will get notice before termination occurs but there won't be anything I can do to stop it from happening.

In April 2012, the Morenos ran into some temporary financial difficulties. They paid Wells Fargo $1,000 that month, not enough to cover the roughly $1,400 they owed on the mortgage and the approximately $40 they owed for the insurance premium. Wells Fargo unilaterally allocated all $1,000 to the mortgage, meaning the Morenos were about $400 short on the mortgage payment and failed to pay the insurance premium altogether. (Obviously, if the Morenos had had any say in it, they would have allocated the first $40 of their April payment to the insurance premium since they were going to be short on the mortgage payment either way.) The Morenos were similarly short on their May and June payments, and Wells Fargo again allocated 100% of those payments to the mortgage and none to the insurance premium owed.

No one ever gave the Morenos prior notice that their insurance policy was about to be terminated, as they had been assured would occur. In August 2012, Wells Fargo simply sent them a notice saying that their policy had been cancelled—not because the policy terminated automatically upon their failure to pay the insurance premium back in April, but because they had failed to pay the

premiums for 90 days.  This was the first the Morenos heard about their policy being terminated, and the notice told them it was too late to do anything about it—the policy had *already* been terminated.  That obviously doesn't qualify as receiving notice "prior to termination."

That the Morenos' policy did not authorize automatic termination upon their failure to make the April payment is confirmed by the actions of Wells Fargo, acting as ABLAC's agent.  Wells Fargo certainly didn't think that the Morenos' failure to make the April payment resulted in automatic termination of the policy.  When the Morenos were short that month, Wells Fargo didn't tell them, "Don't bother paying any further insurance premiums—your policy has been cancelled."  Wells Fargo continued to bill the Morenos for their monthly premiums in May, June, and July, even though the Morenos were short on their May and June payments as well.  So Wells Fargo didn't interpret the policy as providing for automatic termination upon failure to make a single payment.  It understood the policy to contain a grace period of 90 days during which the insured could become current before the policy would be cancelled outright.

The district court dismissed the Morenos' case because it concluded that the defendants' conduct could not have caused the Morenos' injuries.  The court reached that conclusion by two faulty lines of reasoning.  First, the court simply

ignored the reasonable expectations doctrine and assumed that the policy terminated automatically when the Morenos missed that first payment in April, contrary to Wells Fargo's own interpretation of the policy. That line of reasoning is wrong because, under the reasonable expectations doctrine, the assurance "You will be notified prior to termination" became part of the policy, even if other provisions of the policy contradicted that assurance. Second, the district court reasoned that, even if the Morenos had received prior notice as promised, it wouldn't have made any difference—they still wouldn't have been able to pay the mortgage and insurance premiums in April, May, and June, and thus the policy would have been cancelled anyway. That line of reasoning is wrong because the Morenos specifically alleged, in a proposed amendment to their complaint, that if someone had given them prior notice they could have made up the shortfall immediately by tapping into their 401(k) plan and an IRA they owned. They understandably didn't want to do that if they didn't have to, as they would have incurred tax penalties. But they could have and would have done so in order to save the policy. (Not long after the events just described, Mr. Moreno became disabled, so the Morenos can't buy a new policy now.)

Neither of the district court's rationales for dismissing this case can be sustained. I would reverse the judgment and remand for further proceedings.