**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDWARD C. O'BANNON, Jr., On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff-Appellee,<br><br> v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, AKA The NCAA,<br><br>        Defendant-Appellant,<br><br> and<br><br>ELECTRONIC ARTS, INC.; COLLEGIATE LICENSING COMPANY, AKA CLC,<br><br>        Defendants. | No.    16-15803<br><br>D.C. No. 4:09-cv-03329-CW<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted February 15, 2018
Pasadena, California

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  THOMAS, Chief Judge, BYBEE, Circuit Judge, and QUIST,[**] District Judge.

Defendant-appellant the National Collegiate Athletic Association (NCAA) appeals the district court's award of attorneys' fees to the plaintiffs-appellees, a class of former and current college football and men's basketball players, under the Clayton Act.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The parties are familiar with the facts and proceedings, and we will not state them except as necessary to explain our decision.  The district court entered judgment for the plaintiffs after a fourteen-day bench trial, holding that the NCAA's rules prohibiting student-athletes from receiving compensation for the use of their names, images, and likenesses (NILs) were an unlawful restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1.  *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955 (N.D. Cal. 2014).  We affirmed in part and vacated in part.  *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049 (9th Cir. 2015).

While the appeal was pending, the plaintiffs moved for fees and costs under the Clayton Act, 15 U.S.C. § 26, ultimately requesting $44,755,500.23 in fees and

---

[**]    The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

$5,201,566.97 in costs.[1] The request was approved by a magistrate judge with relatively minor reductions. After the issuance of this panel's opinion and supplementary briefing, the district court adopted the magistrate judge's recommendation in part and awarded the plaintiffs $40,794,245.89 as reasonable attorneys' fees and $1,540,195.58 in costs.[2] The NCAA timely appealed.

We review for abuse of discretion, and "[w]e generally give broad deference to the district court's determinations on fee awards because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

I

Under the Clayton Act, a court "shall award the cost of suit, including a reasonable attorney's fee" to any plaintiff who "substantially prevails" in an antitrust action seeking injunctive relief. 15 U.S.C. § 26; *Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1136 (9th Cir. 2008) (noting that "fee shifting under § 26 is mandatory"). The threshold determination of eligibility for attorneys' fees "is a

---

[1] The request excluded, to the extent possible, attorney work done solely for individual damages claims, a proposed former athlete damages sub-class, the drafting of jury instructions and preparation for voir dire, the settlement of the claims against other defendants, and the preparation of the fee application.

[2] The NCAA raised no arguments regarding the award of costs on appeal.

3

generous formulation"; to be a prevailing party, a plaintiff must only "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433; *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."); *Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1036 (9th Cir. 2006) (explaining that "the general rule" is "that the degree of success does not bear on the threshold question of eligibility for an attorney's fees award"). An enforceable judgment on the merits "create[s] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792–93). A plaintiff "substantially prevails" under § 26 by achieving injunctive relief. 15 U.S.C. § 26; *see also Hensley*, 461 U.S. at 435 n.11.

The district court entered judgment against the NCAA for violating the Sherman Act and permanently enjoined it from prohibiting its member schools from compensating the plaintiff class for the use of their NILs by awarding grants-in-aid up to the full cost of attendance. The plaintiffs did not prevail on every

4

issue, but their enforceable judgment materially altered the legal relationship of the parties and clearly demonstrates success on a significant issue. The prospective injunctive relief obtained in this class action directly benefits the certified class and can be enforced by the class.[3] Neither the named plaintiffs nor any other individual class member must prove they will personally receive a direct or material benefit for plaintiffs to be entitled to attorneys' fees.[4] The plaintiffs substantially prevailed in their antitrust action seeking injunctive relief, and accordingly are entitled to attorneys' fees under § 26.

## II

Where a plaintiff achieves partial or limited success, the reasonableness of a fee award under *Hensley* is determined through a two-step process. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). The court first determines if the successful claims were related to the unsuccessful claims. *Id.* at 1168–69. The district court determined that "[a]lthough Plaintiffs refined their theory of the case over the course of the litigation, their abandoned claims 'involve[d] a common core of facts or [were] based on related legal theories.'" *O'Bannon v. Nat'l Collegiate Athletic*

---

[3] The NCAA's argument that the injunctive relief does not benefit the class is foreclosed by our prior opinion. *O'Bannon*, 802 F.3d at 1070–71, 1074 n.18.

[4] There is neither a legal nor a factual basis for the distinction the NCAA attempts to draw between former student-athlete and current student-athlete members of the class.

*Ass'n*, No. C 09-3329 CW, 2016 WL 1255454, at *4 (N.D. Cal. Mar. 31, 2016) (second and third alterations in original) (quoting *Hensley*, 461 U.S. at 435). The plaintiffs represented to the district court that they had, to the extent possible, excised from their fee request hours spent on unrelated claims, and the district court reduced additional hours it found were spent solely on claims against the other defendants. *Id.* at *8–9. The motion for class certification does not, as the NCAA contends, provide a clear dividing line between unsuccessful and successful claims, and the class cannot be retroactively divided into sub-classes. The district court did not abuse its discretion in determining that the claims for which fees were sought were not "'distinctly different' *both* legally *and* factually." *Webb*, 330 F.3d at 1169 (quoting *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901, 902 (9th Cir. 1995)).

The second consideration is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. A plaintiff who did not achieve every goal yet still "obtained excellent results . . . should recover a fully compensatory fee." *Id.* at 435. "It is an abuse of discretion for the district court to award attorneys' fees without *considering* the relationship between the 'extent of success' and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d

805, 810 (9th Cir. 1994) (emphasis added) (quoting *Farrar v. Hobby*, 506 U.S. 103, 116 (1992)).

After supplemental briefing on the impact of our decision "on the overall scope of Plaintiffs' success," the district court agreed with the magistrate judge that the plaintiffs obtained excellent results in this litigation. The court "considered the Ninth Circuit's holding," but concluded that even after partial vacatur of the injunctive relief, "the finding of liability and the remaining injunctive relief are together an excellent result." *O'Bannon*, 2016 WL 1255454, at *4. The court noted that "the decision obtained by Plaintiffs 'is the first by any federal court to hold that any aspect of the NCAA's amateurism rules violate the antitrust laws, let alone to mandate by injunction that the NCAA change its practices.'" *Id.* (quoting *O'Bannon*, 802 F.3d at 1053).

The district court acted well within its discretion in finding that the plaintiffs achieved excellent results. The district court's focus on the plaintiffs' success in achieving injunctive relief, as opposed to their failure to win damages, was entirely appropriate, as the basis for the fee request was § 26. Under § 26, attorneys' fees are mandatory in antitrust cases achieving injunctive relief under a private attorney general theory. *See Sw. Marine, Inc. v. Campbell Indus.*, 732 F.2d 744, 746 (9th Cir. 1984). Moreover, plaintiffs did not request fees for time devoted solely to

their damages claims. The district court also specifically acknowledged the reversal of a portion of the injunctive relief it had ordered before concluding that the plaintiffs achieved excellent results.

To the extent the district court adopted the magistrate judge's reasoning, it did not err despite our intervening opinion. While we emphasized the "limited scope" of our decision, *O'Bannon*, 802 F.3d at 1079, the decision did not undermine the magistrate judge's findings on the plaintiffs' success in this litigation. The plaintiffs prevailed on their "core claim," as characterized by the magistrate judge, and won a permanent injunction prohibiting the NCAA from enforcing a longstanding rule. The NCAA makes much of a supposed "all or nothing" approach taken by the magistrate judge and the district court. But the court considered its earlier rulings, its finding of liability, the ordered injunctive relief, and the Ninth Circuit's opinion in holding that the plaintiffs' limited success did not merit deviating from the lodestar method. It simply reached a conclusion the NCAA does not like: that the award of injunctive relief against the NCAA in an antitrust action brought by private parties is an "excellent result."

Our review is for abuse of discretion, and we give broad deference to the district court's superior understanding of the litigation. *Rodriguez*, 688 F.3d at 653. The plaintiffs are entitled to mandatory attorneys' fees under § 26. The

district court did not abuse its discretion in determining that the plaintiffs' success in achieving injunctive relief was an excellent result and therefore that their fee request was a reasonable basis for the award of those fees.

III

The NCAA's remaining arguments relate to the district court's review and partial adoption of the magistrate judge's recommendation in determining a reasonable award amount and its own review of the plaintiffs' billing records.

The district court should "provide a concise but clear explanation of its reasons for the fee award," but the amount of a fee award ultimately is within the district court's discretion. *Hensley*, 461 U.S. at 437. "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.*

> Congress vested trial courts with the discretion to undertake [fee] analyses because they are by their nature inexact. Reasonable people may differ as to what number of hours was *reasonable* to spend on this case. But once we are satisfied that the district court has considered the appropriate factors for the appropriate reasons, our reviewing function is finished.

*Cunningham v. County of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988). "[I]n cases where a voluminous fee application is filed in exercising its billing judgment

9

the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

The district court's detailed opinion reflects its thorough de novo review of the plaintiffs' attorneys' billing records and the NCAA's objections. The district court provided numerous examples of billing entries to support and explain its decisions on all of the objections, and its familiarity with the records is apparent.[5] It was not required to discuss individually each of the tens of thousands of billing entries to which the NCAA objected. The district court neither "accepted uncritically plaintiff's representations concerning the time expended on this case, [nor] awarded the entire amount requested by plaintiff." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). The district court conducted a careful review of the records and made numerous deductions, in total reducing the award recommended by the magistrate judge by an additional $3,628,610.

The district court's award of reasonable attorneys' fees and costs under the Clayton Act was not an abuse of discretion.

**AFFIRMED.**

---

[5] The district court did not clearly err in overruling or overruling in part the NCAA's objections to purported block billing, fees related to claims against the other defendants, fees for media-related activities, or fees for soliciting clients.